(48 Misc. Rep. 441)

### In re HEARST et al.

(Supreme Court, Special Term, New York County. November 27, 1905.)

1. ELECTIONS—BALLOTS—DESIGNATION OF VOTER'S CHOICE.
    Section 105 of the Election Law, Laws 1898. p. 966, c. 335, containing directions to voters, declares that certain things, such as making any distinct mark upon a ballot, or defacing or tearing the ballot, or making any erasure, "shall not be lawful." It further provides that, in marking his ballot, the elector "should observe the following rules," and states seven rules for the designation of the elector's choice, using in general the words "should," "may," and "can" in stating what the elector should do. Section 110, rule 9, Laws 1898, p. 971, c. 335, relating to canvass of votes, enumerates as the things which invalidate a ballot those which are declared by section 105 not to be lawful, and no others. *Held*, that the failure of a voter to comply with any of the advisory directions of section 105, contained in the rules for marking the ballots, does not invalidate the ballot, or render it blank as to any offices to be filled.

2. SAME—CONSTRUCTION OF BALLOTS.
    Election Law, Laws 1898, p. 969, c. 335, § 110, subd. 2, rules 1–7, prescribe general rules for the construction of ballots. Rule 3 provides that where a voting mark is made at the head of one ticket, and another voting mark is made in the voting space before the name of a candidate on another ticket, the ballot shall be counted for all the candidates on the former ticket, except the one as to whom the voting mark is made in the voting space before the name of his opponent, and shall be counted for such opponent. Rule 6 provides that if a voting mark is made at the head of more than one ticket, and if on either of such tickets there shall be candidates for an office for which no other candidate is named on the other tickets so marked, the vote shall be counted for such candidates. Rule 7 provides that if, for any reason, "it is impossible to determine the elector's choice" of a candidate for an office, his vote shall not be counted for such office. *Held* that, where one ticket, designated as the "J. Nominators," contained the name of but one candidate, J., who was running for District Attorney, and another ticket, known as the "Municipal Ownership," contained a list of candidates for all offices, including one S. as candidate for District Attorney, ballots having a voting mark at the head of both tickets would be counted for all Municipal Ownership candidates except S., and instead of S. they would be counted for J.

3. SAME.
    Ballots having marks at the head of the Republican ticket and of the J. Nominators' ticket, and also having marks in the voting space before J.'s name and before the name of H., who was candidate for mayor on the Municipal Ownership ticket, would be counted for H. for mayor and for J. for District Attorney, and for the Republican candidates for other offices. The additional mark at the head of the J. Nominators' ticket was not such a distinguishing mark as to vitiate the ballot.

**4. SAME.**

Election Law, Laws 1898, p. 969, c. 335, § 110, subd. 2, rule 2, expressly provides that when a mark has been made in a voting circle, and another in any voting space below that circle, the latter mark shall be treated as surplusage.

**5. SAME—CONTESTS—INVESTIGATION OF BALLOTS—POWERS OF COURT.**

Under Election Law, Laws 1896, p. 966, c. 909, § 114, authorizing a judicial investigation of ballots on a writ of mandamus issued upon the application of a candidate, the court is not limited to determining whether the ballots investigated are valid or void, but may go further, and determine for whom such ballots should be counted.

Mandamus proceedings, under section 114 of the Election Law, Laws 1896, p. 966, c. 909, instituted on the application of William Randolph Hearst and others for a judicial investigation of alleged void and protested ballots cast at an election held in the county of New York on November 7, 1905.

The opinion states the facts and the nature of the questions passed upon.

Charles H. Knox and John T. Dooling, for the Democratic party in the county of New York.

Lewis L. Delafield, for William Travers Jerome.

GIEGERICH, J. This is a judicial investigation of alleged void and protested ballots cast in the county of New York at the election held on November 7, 1905, made under a writ of mandamus issued pursuant to section 114 of the Election Law, Laws 1896, p. 966, c. 909. At the election referred to William Travers Jerome was a candidate for the district attorneyship. Upon all the ballots in dispute his name appeared alone in a column under the party title "The Jerome Nominators," at the head of which there is a black square, a device or emblem chosen in conformity with section 56 of the Election Law. There was the customary voting circle at the head of this column, and also the customary voting space before his name. His name did not appear in any other column, and each of the other tickets, viz., the Republican, Democratic, Socialistic, Prohibition, Socialistic Labor, and Municipal Ownership League, had its own candidate for the office of District Attorney. The tickets of the first two parties mentioned contained the names of candidates for all offices for which the elector could have voted. The ticket last mentioned was nearly a complete one. A large number of ballots have been marked by the electors by making the voting mark in the circle at the head of what may be called the Jerome column, and a second voting mark in the circle at the head of the Republican, Democratic, or Municipal Ownership League column, as the case may be. The first and principal question relates to ballots of the class just described, and is whether they shall be counted at all, and, if so, for whom. Although some of them have been returned as void by the inspectors, and hence presumably have not been counted for any candidate, no contention is made by any of the attorneys that such rejection was warranted. Such possible question as there may be as to their validity will be referred to later and at a more convenient point in the discussion. Later on, also, will be considered the question of a ballot marked in the Republican circle, in the voting space before the name

of Mr. William Randolph Hearst, the candidate for mayor on the Municipal Ownership League ticket, and in the circle above and in the voting space before Mr. Jerome's name. Ballots of the class first mentioned, i. e., those marked in the Jerome circle as well as in the circle of some other ticket, should, it is established, be counted for all offices except that of District Attorney. The statute in express language so declares (Election Law, Laws 1898, p. 971, c. 335, § 110, subd. 2, rule 6), and the Court of Appeals has so held (People ex rel. Feeny v. Board of Canvassers, 156 N. Y. 41, 50 N. E. 425). Rule 6, just referred to, provides as follows:

"If the elector shall have made a voting mark in more than one circle at the head of the tickets, and if on either of such tickets there shall be one or more candidates for office for which no other candidate or candidates is or are named on such other ticket or tickets so marked in the circle, his vote shall be counted for such candidate or candidates."

That is to say, candidates whose names appear on both tickets, or on one ticket without any competitor on the other ticket, are voted for by such ballot. This the statute expressly provides. As to what should be done in the case of the other candidates on such ballots it is silent, and that is the question presented. To put it concretely, a ballot so marked at the head of the Municipal Ownership League ticket and at the head of the ticket bearing Mr. Jerome's name alone would concededly be counted for Mr. Hearst and all his fellow candidates except Mr. Clarence J. Shearn, the candidate for District Attorney. The question is, should it be counted for Mr. Jerome or be regarded as a blank ballot so far as the district attorneyship is concerned? Rule 7, subd. 2, § 110, throws light upon this point. It provides as follows:

"Subject to the foregoing rules, if the elector marks more names than there are persons to be elected to an office, or if for any other reason it is impossible to determine the elector's choice of a candidate for an office to be filled, his vote shall not be counted for such office, but shall be returned as a blank vote for such office."

This sets up as a general test the possibility of determining the elector's choice. If it is possible to determine such choice, his ballot is to be counted as he intended; if it is impossible to so determine, his ballot shall not be counted, but treated as a blank to that extent. This test is by the language of rule No. 7 made operative in all cases not specifically provided for in the preceding rules, which provide as follows:

"Rule No. 1. If the elector shall have made a voting mark in the circle above one ticket only, and no other voting mark appears on other ticket or tickets, and if no name shall have been written in the blank column, he shall be deemed to have cast his vote for all the candidates on the ticket so marked in the circle. Rule No. 2. If the elector shall have made a voting mark in the circle above one ticket only, and shall have also made a voting mark or marks in the voting space or spaces before the name or names of a candidate or candidates only on the ticket so marked in the circle, the voting marks in the spaces before the names of candidates on such ticket shall be treated as surplusage, and his vote shall be deemed to have been cast for all the candidates on the ticket so marked in the circle. Rule No. 3. If the elector shall have made a voting mark in the circle above one ticket only, and shall have also made a voting mark in the voting space or spaces before the name or names of a candidate or candidates on one or more other tickets, he shall be deemed to have cast his vote for all the candidates on the ticket so marked in the circle, except for those for whom he has indicated his intention not to

vote by making a voting mark in the voting space before the name or names of individual candidates on one or more other tickets, or by writing a name in the blank column; and the candidate or candidates so individually voted for on such other ticket or tickets shall be deemed to be the voter's choice for such office or offices; provided, however, that: Rule No. 4. When two or more persons are to be voted for for the same office, as two or more justices of the Supreme Court or presidential electors, and the names of the several candidates therefor are printed under the title of the office for which all are running, and the elector shall have made a voting mark in the circle at the head of a ticket, and shall also have made a voting mark in the voting space before the name of one or more of a group of candidates for such office on other tickets, providing that he shall not have marked the names of two or more of such candidates upon the same line upon the ballot, he shall be deemed to have cast his vote for all the candidates for such office so individually marked and for those marked in the circle, except for those candidates under such circle so marked whose names are upon the same line on the ballot as the names of the candidates so individually marked, or written in the blank column, unless in addition to making the voting mark in the circle at the head of the ticket he shall also have made a voting mark before each one of the group of candidates for such office for whom he desires to vote on the ticket so marked in the circle; provided further, however, that: Rule No. 5. When two or more persons are to be voted for for the same office, as two or more justices of the Supreme Court or presidential electors, and the names of the several candidates therefor are printed on any ticket under the title of the office for which all are running, and the electors shall have made a voting mark in the circle at the head of the ticket, and shall also have made a voting mark in the voting space before the name of more than one of the group of candidates for such office printed on the same line on the ballot on other tickets, or by writing the name or names of a candidate or candidates in the blank column, he must also indicate by voting marks in the voting spaces on the ticket so marked in the circle the individual candidates of the group of candidates on such ticket for whom he desires to vote, or his vote shall only be counted for the candidates for such office which are so individually marked on other tickets, or written in the blank column. Rule No. 6. If the elector shall have made a voting mark in more than one circle at the head of the tickets, and if on either of such tickets there shall be one or more candidates for office for which no other candidate or candidates is or are named on such other ticket or tickets so marked in the circle, his vote shall be counted for such candidate or candidates."

It will be seen that these rules, for the most part, declare what shall be the significance and effect of certain marks or combinations of marks the most likely to occur. In all such cases there is no question to be left to the inspectors of election or the courts as to the meaning of the marks. The Legislature wisely refrained, however, from attempting to foresee and provide for all possible combinations, and instead established a final and general rule under which the courts should, when appealed to, determine whether and to what extent the vote should be counted. Applying this test to the marking within two circles on a ballot, it may be said that if there are two or more candidates on the second ticket so marked in the circle there is no question that it would be "impossible to determine the elector's choice" as to such two or more candidates. The theory of allowing a mark in a particular circle to count as a vote for all candidates under that circle, except such as the elector has indicated his intention not to vote for by making a voting mark in the space before the name of some candidate or candidates on some other ticket, and of counting the ballot for such other candidate or candidates thus individually designated (Election Law, § 110, subd. 2, rule 3), is that a general choice shall be given effect except where in

conflict with a particular choice; in other words, the general choice of all the individuals of the group expressed by the voting mark in the circle is overridden by the particular choice of certain individuals in other columns, expressed by marks in the voting squares before such other names. Where the name of an individual is printed alone in a column, however, the specific intention to vote for that individual is as indubitably expressed by making the mark in the circle as by making it before his name. In either case it is that candidate, and nobody else, that the elector can have intended to choose. No other name stood in the column, and no other name could have attracted the elector to it. All this reasoning fails, however, when two or more names appear in the second column. It is only where the second column contains only one name that a mark in the circle logically and legally has the same significance as though it were made in the voting space before the name. Where an elector votes for two groups of candidates, say A., B., C., D. and A., B., E. for offices one, two, three, and four, he clearly chooses A. and B. because they are on both tickets. With equal clearness he chooses D. for the fourth office, because D. has no competitor for that office. He has, however, failed to express a preference for either C. or E., the rival candidates for the third office, because he has apparently attempted to vote for both by precisely the same method, viz., by indicating his choice of the groups in which they respectively stand. One act is of exactly the same force and significance as the other, and offsets the other, and the ballot is left neutral as to that office, and cannot be counted for either candidate.

A general proposition contended for in the brief on behalf of the Democratic party in the county of New York is that "a legal vote requires not the mere absence of an objectionable mark on the ballot, but a positive affirmative act in compliance with the statutory direction." I do not so construe the act. On the contrary, in People ex rel. Nichols v. Board of Canvassers, 129 N. Y. 395, at page 402, 29 N. E., at page 330 (14 L. R. A. 624), the Court of Appeals said:

"In the absence of some clear and positive prohibition in the statute against counting such ballots, the tendency of the courts would undoubtedly be in the direction of effectuating, as far as possible, the intent of the voter. But it is the duty of this court to declare the law as it finds it, and if a fair consideration of the language used in the statute and its general policy should result in the exclusion of the ballots in question, it may be said that it was not the first time that a citizen attempted to exercise a right, and either through neglect, mistake, or ignorance failed in the accomplishment of his object."

So far as any positive prohibition applicable to the case under discussion is concerned, it should be observed that section 105, under the title, "Preparation of Ballots by Electors," contains certain directions to voters, and it is therein declared that certain things "shall not be lawful," such as making any mark upon the official ballot other than a cross mark with a pencil having black lead, and in the circles or voting spaces only, or writing anything thereon other than the name or names of persons not printed upon the ballot, or defacing or tearing a ballot in any manner, or making any erasure. The foregoing provisions are doubtless imperative, but the section then goes on with certain other provisions, which for the most part seem clearly to be permissive or directory. Seven

rules are set forth, with an introduction as follows: "The elector should observe the following rules in marking his ballot." It is noticeable that the language here passes from the imperative form used before to the advisory form. The seven rules referred to provide as follows:

"Rule 1. If the elector desires to vote a straight ticket, that is, for each and every candidate of one party for whatever office nominated, he should make a cross X mark in the circle above the name of the party at the head of the ticket. Rule 2. If the elector desires to vote a split ticket, that is, for candidates of different parties, he should not make a cross X mark in the circle above the name of any party, but should make a cross X mark in the voting space before the name of each candidate for whom he desires to vote on whatever ticket he may be. Rule 3. If the ticket marked in the circle for a straight ticket does not contain the names of candidates for all offices for which the elector may vote, he may vote for candidates for such offices so omitted by making a cross X mark before the names of candidates for such offices on other tickets, or by writing the names, if they are not printed upon the ballot, in the blank column under the title of the office. Rule 4. If the elector desires to vote for any person whose name does not appear upon the ballot he can so vote by writing the name with a pencil having black lead in the proper place in the blank column. Rule 5. The elector can vote blank for any office by omitting to make a cross X mark in any circle, and making a cross X mark in the voting space before the name of every candidate he desires to vote for, except for the office for which he desires to cast a blank vote. Rule 6. In the case of a question submitted the elector shall make a cross X mark in the blank square space on the right of and after the answer 'yes' or 'no' which he desires to give on each such question submitted. Rule 7. One straight line crossing another straight line at any angle within a circle, or within the voting spaces, shall be deemed a valid voting mark."

It will be further observed that in the enunciation of the first six rules the words "should," "may," and "can" are for the most part used. It is significant also that rule No. 9 of section 110, which relates to the canvass of votes, and defines what shall constitute a void ballot, and commands that "upon such ballot no vote for any candidate thereon shall be counted," corresponds completely with the imperative provision of section 105. The very things which section 105 states "shall not be lawful" are the things, and the only things, mentioned by rule 9, of section 110 as rendering a ballot void. The things which a voter is advised to do or not to do in the latter portions of section 105 are not mentioned in section 110, which alone imposes the penalties. My conclusion is that a failure to comply with any of these advisory directions to voters as to how to vote for the candidates desired did not of itself invalidate any of the ballots in dispute, or render them blank as to any of the offices to be filled.

Instead of the general proposition above contended for on behalf of the Democratic party in the county of New York, therefore, the following would be a more accurate statement, namely, that where the intention of the elector is apparent, his ballot should be counted, unless there is some clear and positive prohibition in the statute against such counting, or unless so doing would be in contravention of the general policy of the statute and a fair construction of the language used. In the present case there is certainly no positive prohibition against counting ballots of the kind now in question. Neither do I think that to count them would be in contravention of the policy of the statute. The purpose of that statute was to insure secrecy and purity of the ballot, and

thus to check or prevent bribery by rendering it impossible for the briber to ascertain for whom the purchased voter had cast his ballot. For this reason the courts have been alert and scrutinizing in rejecting all ballots so marked as to be distinguishable. The method of marking the ballots in dispute, however, is obviously one not calculated to identify them. It was a natural thing to do for an elector not fully conversant with the complicated provisions of the election law, and was an honest thing to do; and the very fact that it was so much anticipated and discussed before the election as a method which many voters would doubtless follow renders it impossible that it should have been resorted to by prearrangement between a briber and a purchased voter as a method of identifying a ballot. My conclusion is that the intent of the electors is clearly manifest in the case of such ballots, and that there is nothing in such method of marking to violate either any positive prohibition of the election law or its general policy and purpose, and that such ballots should be counted for Mr. Jerome. In this discussion I have made no reference to various reported cases where ballots were marked at the head of two columns, because it does not appear in any of them that either column contained a single name as in this case, and therefore reasons applying in such cases and in the present one are totally different, as above pointed out.

Reliance is placed by the counsel for the Democratic party in the county of New York upon an expression in People ex rel. Wells v. Collin, 19 App. Div. 457, at page 459, 46 N. Y. Supp. 701, viz.: "That, in determining the validity of a vote cast under the provisions of that act (meaning the present election law), the court must determine, not merely what was the intention of the voter, but whether he has expressed that intention in the manner provided by law." That was said, it will be observed, with respect to the validity, not the meaning, of a ballot, and in that regard differs from the present case. There the voter had made his voting mark before the name of the candidate, but not within the voting space. The court pointed out that this was a method of marking explicitly declared by the statute to be "unlawful," and was in violation of the purpose of the act, which was to preserve the secrecy of the ballot. In both these respects, as above shown, the present case differs from that. Here, owing to the exceptional circumstances that one of the columns contained only a single name, it was possible for the voter to make his intention plain without following the directory portions of the statute, and at the same time without violating any of its express prohibitions or identifying his ballot.

The next question presented is how to count a ballot which has marks both in the circle of the Republican ticket and of the ticket in which Mr. Jerome's name appears, and also has marks in the voting space before Mr. Hearst's name and in the voting space before Mr. Jerome's name. If it were not for the mark in the voting circle above Mr. Jerome's name, there would be no possible question that the ballot should be counted for Mr. Hearst for mayor and Mr. Jerome for District Attorney and for the Republican candidates for all other offices. The question is whether the additional mark in the circle above Mr. Jerome's name affects the ballot. My opinion is that it does not. The intention of the voter is clearly shown to vote for Mr. Hearst

for mayor, for Mr. Jerome for District Attorney, and for the Republican candidates for all other offices, and unless it appears that the marking was made for the purpose of identification, such intention should be given effect. If it was marked for identification, the whole ballot would, of course, be void. It would be a very strained interpretation to hold that such marks were intended for distinguishing marks, or could have that effect. It would be a perfectly natural error for a voter to make who was in doubt whether to mark at the head of the Jerome column or in front of the name to make the cross in both places. Besides all this, the statute expressly provides (rule No. 2, subd. 2, § 110) that when a mark has been made in a voting circle and another in any voting space below that circle the latter mark shall be treated as surplusage. The ballot should be counted as above indicated.

A further question has been raised as to whether the power of the court in such a proceeding as this is not limited to determining whether the ballots in question are valid or void, without going further, and determining for whom they should be counted. If the board of canvassers should fail to agree for what candidates a disputed ballot should be counted, it is difficult to see how the question could ever be determined if it is not one intended to be referred to the court. Moreover, it has been the practice of the courts without question, when such controversies have come before them, to determine not only whether the ballots are void or not, but to go further, and determine for what particular candidates they should be counted. An illustration of this practice of the courts is found in People ex rel. Feeny v. Board of Canvassers, 156 N. Y., at pages 40, 41, and 64, 50 N. E. 425.

My opinion is that the courts properly have the power heretofore assumed and exercised by them apparently without question in such cases. Exercising such power in this case, I determine that all the ballots in dispute should be counted for Mr. Jerome for the district attorneyship, and for the candidates for the other offices as above indicated, if and so far as they have not already been so counted.