| Kuczynski v Marshall |
|---|
| 2025 NY Slip Op 30509(U) |
| February 14, 2025 |
| Supreme Court, Saratoga County |
| Docket Number: Index No. EF2025443 |
| Judge: James E. Walsh |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At Supreme Court of the State of New York
Held in and for the County of Saratoga,
At the Courthouse located at 30 McMaster
Street – Building #3, Ballston Spa, New York
12020 on the 7th day of February, 2025

PRESENT:  Hon. James E. Walsh, J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA

---

HANK KUCZYNSKI,

                Petitioner,

    -against-

CHARLES MARSHALL,

             Respondent-Candidate,

    -and-

CASSANDRA BAGRAMIAN and
JOSEPH SUHRADA, Commissioner
Constituting the Saratoga County Board of Elections,

             Respondents

**DECISION AND ORDER**

RJI # 45-1-2025-0157

INDEX #EF2025443

---

The instant matter is brought on by Order to Show Cause under Article 16 of the NYS Election Law, filed on January 31, 2025 and made returnable on February 7, 2025. A second Order to Show Cause under Index #EF2025521 was initiated by Respondent-Candidate Marshall and signed on the return date of the instant matter. The Court will consider only the first Order to Show Cause, recognizing that the

Page 1 of 12

second matter was a procedural place holder, to ensure that any relief requested by Petitioner Kuczynski would also be available to Respondent-Candidate Marshall.

Petitioner Kuczynski is objecting to the actions, or lack thereof, taken during canvassing of ballots by the Saratoga County Board of Elections. The Commissioners of the Saratoga Board of Elections have a disagreement as to whether 106 ballots should be included in the special election canvass. The public office in dispute is for that of Commissioner of Public Works for the City of Saratoga Springs. Mr. Henry "Hank" Kuczynski was a write-in candidate for said office (Petitioner Exhibit 1), while Mr. Marshall's name appeared on the ballot for the same office.

By stipulation, the parties agreed to certain facts at the outset of the hearing in this matter. The first stipulation was that Charles "Chuck" Marshall received 1757 votes by total voted on machines, and that an additional 3 votes were cast for Mr. Marshall by way of affidavit ballots. Thus, the parties stipulated that Mr. Marshall received a total of 1,760 votes for the public office of Commissioner of Public Works. The parties further agreed that the Board of Elections would be required to count any valid ballot which arrives up until February 10, 2025. Election Law § 16-116 tells the court that election proceedings will have a preference over all other causes in all courts. The underlying mission of the Court is to deliver equal justice under the law.

Again, by stipulation, the parties agreed that Mr. Kuczynski received 1,663 valid write in votes. The central issue before the Court is the status of 106 ballots (Board of Elections Exhibit A) which at the time of the hearing in this matter were not included in the canvas due to objections made by Mr. Marshall, and the resulting

[* 2]

split decisions by the Election Commissioners. Board of Elections Exhibit A is a 123-page document which is comprised of copies of the actual disputed ballots, which contain handwritten notes to illuminate the rulings made by each of the Saratoga County Board of Election Commissioners, both whom are Respondents in this matter. The Parties stipulated that the Court would take judicial notice that Respondent Commissioner Bagramian voted to validate and canvass all 106 ballots, and that Respondent Commissioner Suhrada voted to invalidate all 106 ballots at the time of the canvas, based upon objections made during the canvass.[1] The Board of Elections Exhibit A contains 123 pages, which are "Bates marked", as the parties agreed to include slip sheets to identify the date and manner in which each ballot was cast. Board of Elections Exhibit "A" Bates numbers 5, 8, 11, 14, 17, 20, 26, 32, 40, 49, 52, 54, 55, 57, 59, 61 are the blank slip sheet pages. (*See* Petitioners Exhibit #7, which is a 4-page summary of the Bates numbers, objections, what type of ballot and when said ballot was cast.)

Public confidence in our electoral system is the foundation of American democracy, and it must never be compromised. To ensure fair and orderly elections and promote public confidence, the New York State Legislature has designed and adopted a comprehensive statutory framework consisting of 17 articles governing the entire electoral process. *Higby v. Mahoney*, 48 NY2d 15, 21 [1979]. Under the Election

---

[1] The parties also advised the Court that between 21 and 25 machine-counted ballots may have been undercounted, but sufficient proof regarding these ballots was not presented during the hearing. Following the conclusion of submission, Petitioner requested that the Court rule on addressing the undercounted machine votes, while Respondent-Candidate objected. In view of the Court's analysis of the contested ballots, further examination of this tranche of ballots appears academic.

Page 3 of 12

[* 3]

Law, the power of the judiciary to intervene is intentionally limited, and can only be called upon by candidates to preserve procedural integrity and "ensure the strict and uniform application of the election law." *Shiroff v. NYS Board of Elections*, 77 Misc.3d 773, 776 [Onondaga Sup. Ct. 2022], citing Election Law § 16-106[4]; *Matter of Gross v. Albany County Bd. of Elections*, 3 NY3d 251, 258 [2004].

"We note at the outset the well-established principle that '[b]road policy considerations weigh in favor of requiring strict compliance with the Election Law ... [for] a too-liberal construction ... has the potential for inviting mischief on the part of candidates, or their supporters or aides, or worse still, manipulations of the entire election process'" *Matter of Gross v. Albany County Bd. of Elections*, 3 NY3d 251, 258, [2004], quoting *Matter of Staber v. Fidler*, 65 NY2d 529, 534 [1985]. *See also, Alessio v. Carey*, 49 AD3d 1147 [4th Dept. 2008].

As the question presented centers exclusively around ballots with write-in votes, the Court must consider Election Law §8-308 as well as §9-112. Petitioner Kuczynski, by way of a January 15, 2025 correspondence with the Saratoga County Board of Elections, informed said board of his "write-in" campaign. (*See* Petitioners Exhibit #1). Additionally, Petitioner Kuczynski testified that he had never run a write-in campaign and needed to take steps to help wage a successful campaign. (*See* Petitioners Exhibit #2). Indeed, literature was created on behalf of Petitioner to attempt to educate the voters in this special election as to how to cast a "write-in" ballot. As the legislature has considered the necessity for writing in votes, they

Page 4 of 12

[* 4]

established such a provision in Election Law §8-302, which allows such names to be written upon the ballot, and the legal framework to be undertaken.

The role of the Court is, therefore, very simple: to set forth the law as enacted, and to make sure that the law is followed. Election Law § 16-106 grants the Court the authority to oversee the casting and canvassing of ballots. Between 2015 and 2023, the NYS Legislature has made at least one hundred forty-four (144) changes to the NYS Election Law. *See Election Law Update*, NYS Board of Elections 2018 – 2023. These changes did not alter the controlling sections of either Election Law §8-302 nor §9-112. During her testimony, Respondent Commissioner Bagramian argues that §9-112 states that the ballot should not be declared void or blank should the Court be able to understand the intent of the voter.

The election law in general has been constructed to "prevent fraud, preserve secrecy and to secure freedom of choice, they should not be construed as to make the right of voting insecure." *See New York Election Law*, page 223 by Lewis Abrahams, Dennis & Co., Inc. [1950]. Certainly no fraud has been alleged in this matter, but the reasoning behind the statue is to reinforce public confidence in both the electoral system and the freedom of choice.

Respondent Commissioner Bagramian testified that discerning the intent of the voter was a newer requirement, brought about by more recent changes in the Election Law. The Court disagrees, as the intent of the voter has been taken into consideration for well over 100 years. *See generally, Matter of Hearst*, 48 Misc. 441 [NY Sup. Ct. 1905]; *See also,* section 219 of the Election Law of 1922. "If the intention

Page 5 of 12

[* 5]

of the voter can be fairly ascertained from his ballot and it appears that he acted honestly, the voter should not be disfranchised or deprived of his right to vote through mere inadvertence, mistake or ignorance, even though the marking is not in strict conformity with the law." *Abrahams NYS Election Law*, page 224, *id.* Such requirements pertain to the mark for voting, as unintended extrinsic marks, unless identifying, are not meant to invalidate a ballot. However, the vast majority of ballots that have been objected to in this case are due to the words printed on the ballot, by the voter, outside the voting area.

Respondent Commissioner Bagramian's testimony may have been referring to Chapter 228 of the Laws of 2022, as said chapter amended the method of absentee voting, addressed by Election Law §8-410, but such is not clear. In the instant matter, only two absentee ballots (Board of Elections Exhibit A; Bates pages 1 and 2) had objections filed and preserved for review by this Court. As no argument has been made with respect to Election Law §8-410, except the vague reference to voter intent, the Court will center its analysis regarding Election Law §8-308(3), together with the §9-112(1) and controlling caselaw.

Election Law §8-308(3) provides "A write-in ballot must be cast in its appropriate place on the ballot, or it *shall be void* and not counted." *Emphasis added.* Election Law § 9-112 provides that: "The whole ballot is *void* if the voter ... makes any erasure thereon or ... makes any mark thereon other than a cross X mark or a check V mark in a voting square." *Emphasis added.* The Third Department of the Appellate Division has consistently ruled that "written words deliberately placed on

Page 6 of 12

[* 6]

the ballot by the voter, render...the entire ballot invalid." *Matter of Scanlon v. Savago*, 160 AD2d 1162 [3rd Dept. 1990]; *See also, Matter of Young v. Fruci*, 112 AD3d 1138 [3rd Dept. 2013].

As a general rule, words appearing upon the ballot will void the ballot. (*See, Matter of Scanlon v. Savago*, 160 AD2d 1162 [3rd Dept. 1990]. That rule has exceptions. One such exception has been allowed by the legislature in Election § 8-308, but that exception has language which limits where the name of the candidate may appear. Particularly, the court must view Election Law §8-308(3) together with the §9-112(1), in a light to follow the extremely detailed law as enacted by the legislature.

A review of many of the contested ballots shows that in one form or another the words "Dem, Dem., Democrat, Democrat, D., Democratic, Democrate [sic] or just the initial D appear in some form on the following 63 ballots, identified as Bates page numbers from Board of Elections Exhibit "A" as: 2, 3, 4, 13, 18, 19, 21, 22, 23, 24, 27, 29, 30, 33, 34, 35, 36, 41, 47, 48, 50, 51, 53, 58, 63, 64, 65, 66, 67, 68, 69, 72, 73, 74, 75, 76, 77, 80, 83, 84, 85, 86, 87, 90, 91, 92, 93, 96, 97, 98, 101, 104, 105, 108, 110, 112, 114, 115, 116, 117, 119, 120 and 121. Said word(s) added to the ballot appear on the ballot, outside the area designated for a "write-in" vote. They appear in different columns of the ballot, are in some places duplicated in multiple separate places. Some of the above-listed ballots also have other infirmities which will be outlined below. Containing words outside the write-in space invalidate these ballots, pursuant to *Scanlan* and *Young*.

Page 7 of 12

[* 7]

Additionally, on two ballots Board of Elections Exhibit "A", Bates pages 31 and 81, the words Commissioner of Public Works or Public Works Commissioner have been written upon the ballot in the column under the pre-printed word Office in addition to the name of the candidate written into the write-in space upon the ballot. Likewise, these ballots, containing words outside the write-in space, are invalid.

Board of Elections Exhibit A, Bates page 79 in the voting square has the name of the Petitioner, with some type of extraneous mark which appears to be crossed out, with initials next to the mark. As such, said ballot may not be canvassed, as it contains information identifying the voter, as well as cross-outs. Nor should the Ballot Exhibit A, Bates page 41, with Democrat written under the preprinted word Republican with an arrow toward the bottom of the page, and the name of the Petitioner written twice upon the ballot, one writing inside the space designated for the write-in vote, and the other 5 rows above it under the name of Respondent Marshall. A second long arrow is drawn down the ballot. This represents another intentional marking, other than words, which would violate the ballot, according to both Election Law §8-302 and § 9-112, rendering Bates page 41 as an invalid ballot. Bates page 25 contains the written name of Petitioner outside of the write-in box and cannot be counted.

In addition to the word Democrat written upon Board of Elections Exhibit "A", Bates page 2, the voter has darkened the oval for Charles Marshall, placed the "X" in that voter square, and also wrote in the name of Hank Kuczynski, which voids this ballot for a second reason of voting for both candidates. Likewise, Board of Elections

Page 8 of 12

[* 8]

Exhibit "A", Bates pages 38, 43, 46 and 111 contain writing outside the write-in box, along with cross-outs, rendering these ballots invalid.

With respect to Board of Elections Exhibit "A", Bates page 82, the name of Petitioner is written in three times in the area provided for a write in vote. Placing the name three times is concerning, as it could tend to identify the individual who cast that ballot. Board of Elections Exhibit "A", Bates page 60, the ballot contains the name of the Petitioner, in a space below the title of public office. Said name written-in was located outside of the designated write-in area of the ballot and this Court is bound to follow the statute and controlling caselaw to determine that said ballot is void.

Regarding Board of Elections Exhibit "A", Bates pages 7, 9, 12, 15, 16, 37, 45, 56, 70, 71, 103, 106, 107, and 122, all those ballots have Petitioner's name in the designated write-in area of the ballot, but also have the same name being written in other areas of the ballot. Some list Petitioner's name in the space above the name of Respondent Marshall, while some list his name in the area next to the write-in area. As these ballots have words written upon the ballot in areas other than the write-in area, such ballots are void, pursuant to Election Law §§8-302 and 9-112 and controlling caselaw.

With respect to Board of Elections Exhibit "A", Bates page 113, the voter has written in the name of Chuck Kuczynski, which is a blend of the Respondent Candidate Charles Marshall's nickname, as testified to by Petitioner, and Petitioner's last name. As such, the intent of the voter is not clear and this ballot should not be

Page 9 of 12

canvassed. Similarly, Board of Elections Exhibit "A", Bates page 28 contains the name "Hank Ky", which this Court determines to be insufficient to be counted as a vote for Petitioner.

With respect to Board of Elections Exhibit "A", Bates pages 42 and 94, the voters have circled either the entire name of the candidate or the "Write-in" words on said ballot. As such, those markings are identifying in nature and void the ballot pursuant to Election Law § 9-112.

The Court finds that Board of Elections Exhibit "A", Bates pages 1, 10, 39, 44, 62, 78, 89, 95, 99, 100, 102, 109, 118 and 123 are all ballots where the voter has attempted to vote for Petitioner Kuczynski. While many of these ballots had markings outside of the area designated for write-in votes, the markings and irregularity, or misspellings, do not rise to the level to invalidate the ballot. While strict adherence to Election Law § 9-112, may tend to invalidate those ballots, the Court, finds that the intent of the voter was clear and the marks do not tend to be identifiable and are unlike the disposition of actual words upon the ballot, as held to invalidate a ballot by the Third Department in *Scanlon* and *Young*.

With respect to Board of Elections Exhibit "A", Bates page 6, the Court finds that the vote for "Karl Kuczynski", which includes Petitioner's last name, allows the Court to determine the voter's intent to vote for Petitioner, despite the voter's mistake of the wrong first name appearing within the write in area to vote. With respect to Board of Elections Exhibit "A", Bates page 88, the handwriting of the voter makes it difficult to read, but the Petitioner's first name is clear, and the last half of the second

Page 10 of 12

name allows the Court to determine said write in vote should be canvassed on behalf of Petitioner.

It is hereby

**ORDERED** that Respondents are directed to perform the ministerial task to determine results for the January 28, 2025 Special Election for the position of Commissioner of Public Works for the City of Saratoga Springs, utilizing the ruling on questions of fact and law determined by this Court and certify the party which has the largest number of valid votes.

Signed at Ballston Spa, New York
this 14th day of February, 2025

Hon. James E. Walsh
Supreme Court Justice

ENTER:     Entered Saratoga County Clerk
02/14/2025

**Papers reviewed and considered:**

Verified Petition, filed on January 31, 2025

Attorney Affirmation in support in Verified Petition of Sarah J. Burger, Esq., dated January 31, 2025

Answer in a Special Proceeding on behalf of Respondent-Candidate, filed on February 5, 2025

Proof adduced at hearing conducted on February 7, 2025

Letter-Brief on behalf of Respondent-Candidate Marshall of Matthew J. Clyne, Esq., filed on February 10, 2025

Page 11 of 12

Post-Trial Affirmation on behalf of Respondent Commissioner Bagramian of Daniel S. Szalkiewicz, Esq., filed on February 10, 2025, with Exhibits 1-2

Memorandum of Law on behalf of Petitioner Kuczynski of Sarah J. Burger, Esq., filed on February 10, 2025

Memorandum of Law on behalf of Respondent Commissioner Suhrada of John E. Sweeney, Esq., hand-delivered to Court on February 10, 2025 and filed on February 13, 2025